May I please report, I'm Joseph Walsh, appearing for the appellant. I'd like to reserve three minutes for rebuttal time. Certainly. Your Honor, this is appeal of a denial of a petition for writ of habeas corpus by a state prisoner alleging ineffective assistance of counsel under Strickland v. Washington based upon trial counsel's failure to raise a trial objection to the admissibility of shaken baby syndrome expert testimony. Appellant was convicted of assaulting a child causing death and was sentenced to 25 years to life. And the facts of the case were that he was home alone with an 18-year-old stepchild who was found who became unconscious. A baby, 18 months old. No, it's not 18 years. I'm sorry, Your Honor, 18-month-old stepchild. He was found home alone. When the mother came home, she dialed 911. Paramedics arrived. The police arrived. The child was taken to the hospital where he died at the hospital the following day. The appellant told the police and the hospital staff that the baby had choked on a penny and he had given the Heimlich maneuver and patted the back of the baby. At the child, when he was examined by the doctors, there was no visible injury to the child at all. But the autopsy showed that there was blunt force trauma to the head. There was no evidence that appellant had actually struck the child in the head. But the prosecutor offered There were three bruises, if I understood. They removed the skin. Yes, they removed the skin. They found three bruises in three separate places on the kid's face. Yes, Your Honor. And there was swelling of the brain, bleeding of the brain, and there was also retinal bleeding. None of that was visible from just visible examination of the child. These were examinations conducted after the child was at the hospital and during the autopsy. Your argument is that counsel was ineffective for failing to block the admission of shaken baby syndrome evidence altogether, right? Not that he didn't present a vigorous defense in terms of calling experts and vigorously presenting cross-examination. It's the failure to object to block the evidence altogether. Is that the argument? Yes, Your Honor. Is there any indication that if he had objected, that that objection might have a chance of being sustained? Is there any case that you're aware of where the California court has precluded shaken baby syndrome evidence altogether? Well, there is no case. There's no published opinion in California law one way or the other on the topic. There's no case that says it's admissible. There's no case that says it's inadmissible. But there was adequate legal authority under California law for a defense attorney in a criminal case to object to expert testimony. Evidence code 801, for example, only allows expert testimony if it's supported by reliable science. But if there's no chance of getting that objection sustained, in other words, if the objection would have been futile, then where's the ineffectiveness of counsel's performance? That's correct. And that's why most of my argument in the brief was pointing to the fact that shaken baby syndrome is no longer a valid – is no longer supported by valid science. And if he had made the objection, there was adequate case authority. The People v. Bledsoe case, for instance, the California Supreme Court held that rape trauma syndrome evidence could not be admitted in order to prove that a woman was raped. What the prosecutors in those cases were doing was bringing a psychologist who would interview the woman, and then he would testify that based on my interview and my study of the way women react to being raped,  and the California Supreme Court held that you cannot use an expert to prove the crime. And in the shaken baby syndrome situation, the prosecution is doing the same thing. They're having a doctor examine the child, come up with three symptoms, and then on the basis of that, they form the expert – two major expert opinions. One, that the child was – suffered these injuries as a result of shaken baby syndrome, and two, that the symptoms come on almost immediately, and therefore the person who is last in possession or custody of the child, that was the perpetrator. And so there is adequate scientific research recently that has proven that the scientific underpinnings – Yeah, the most compelling scientific evidence that you cite in your brief is by Dr. Gebeth, is that how he pronounces his name? Gebeth, yes. I'm sorry. Challenging the pathopsychologic connection between subdural hematoma, et cetera. That article was published after the trial. Yeah, but he was summarizing science that was in existence. I mean, you send about two pages on it in your brief. But I have a couple of questions. First of all, when the California court said that it didn't meet the second prong of Strickland, I know you're quibbling about whether but for or reasonable possibility, but let's put that, what I regard as a slip of the pen aside. When they said it wouldn't have made a difference, weren't they saying in the context of this case that it was not admissible under California law? And that's a California court saying that. I disagree, Your Honor. Well, tell me why. In other words, what does it mean when the court says it wouldn't have made a difference but for? It wouldn't have made a difference. What they're really saying, as I read it, is that it wasn't admissible. I disagree, Your Honor. I'm sorry. I'm misspeaking. That it was admissible and that it could not be excluded. I misspoke. Because if that was the reading, then there would be no reason to go to the second prong of Strickland, which is the prejudice prong. No, the reason they had to go to the second prong was because the lawyer put it on the first prong. It's whether he, you know, he didn't do what a reasonable lawyer should do, blah, blah, blah. The lawyer put in an affidavit saying I had no strategic reason. I don't know why. In effect, I just didn't put it in and I had no reason. He was admitting he made a mistake in not defending and he had no judgment. By the way, that may be true or it's not uncommon in my own experience for defense lawyers to throw themselves on the sword for the benefit of their client and say, yes, I was incompetent. So the California court couldn't say that he had some strategic reason. They couldn't say that they didn't deal with the first prong of Strickland. They denied the habeas on the grounds that it wouldn't have made a difference even if he had objected. And my understanding of that is that it wouldn't have made any difference because under California law it would have been a futile objection. Well, it certainly didn't say that. And the but-for test, the way I see it. Well, what does it mean? Forget but-for. I know your argument about he didn't say reasonable probability but-for. But what the court is saying in that has to mean that the objection would have been futile. Otherwise, it would have made a difference. No, because my understanding of Strickland is the first part of the test is did he perform deficiently? In other words, should he have made the objection? Well, should he? Yeah, yeah. Maybe he should have. If the answer is yes, then they look at what's the consequences of his. Should have is what do you have to lose by making the objection. But when the court said it wouldn't have made any difference, what it was saying, and I won't repeat it one more time, in my view, what it was saying is it wouldn't have made any difference because the objection would not have succeeded. I think what they were saying is it wouldn't have made any difference because if the That's not what you argue. In fact, you argue that it was a reversible error. That's what I'm arguing, of course. No, no, no. But I don't think that that's what they were saying. And you make a fairly strong argument that if this evidence was excluded, it might have been a much closer case and a much harder one to apply some sort of harmless error analysis. And that's why I think that the argument on the second prong of prejudice is very strong. And the real issue in the case is whether if the objection had been made, whether the evidence would have been excluded. But all the evidence had been excluded? In other words, as I read some of this evidence, not all of the people were testifying specifically that the cause of death was shaking baby syndrome. A lot of the evidence was simply that it was consistent with all of this terrible trauma, which sounds terrible when you read it, that occurred inside the baby's head, was consistent with either the baby being shaken or some blunt, several blunt blows to the head. They weren't all saying that it was shaking baby syndrome. And I think one of them even refused to say that it was shaking baby syndrome because he said on cross-examination that he wouldn't want to say that because of the controversy surrounding shaking baby syndrome and because he didn't have any evidence that the baby was actually shaken. And that came out in front of the jury. So would it have excluded? Yeah, maybe it might have excluded somebody, one of the experts who testified that he was going to say beyond a reasonable doubt it was shaking baby syndrome. But it seems to me that much of this evidence could come in if they could simply say that the cause of this injury was blunt trauma to the head and it's consistent with the baby had been shaken. And I don't know that that was excludable. Well, I think that would have been excludable because the evidence in the case was that the baby had trauma to the head as a result of what the autopsy physician thought was blunt force applied to the head. Right. So if you take the shaken baby syndrome out of it, then the baby hit his head somehow. Either he fell or he was pushed or he was hit. Maybe he was hit. Maybe he was hit in the head. Maybe he was hit several times in the head. But are you saying that you couldn't admit testimony that the devastating injuries to the baby's brain were consistent with having been shaken? Yes, because the science is that shaking alone without injury to the neck cannot cause this trauma to the head. You introduced evidence to that effect. I mean, the argument. And there was a case, Your Honor, from Wisconsin State v. Edmond where a babysitter was convicted on shaken baby syndrome evidence. And then at a later habeas corpus proceeding, they presented the science, the legitimate science that shaking alone will not cause the death of the baby unless there's some trauma to the neck. And secondly, there was evidence. Well, and you introduced, he introduced evidence. When I say he, I'm going to say you. You'll know what I mean. The lawyer for your client actually did introduce evidence of that in his own case, that a baby that old, there would have to be injury to the neck in order to cause the kind of severe damage that resulted here. But the lawyer has a duty to challenge improper junk science is basically what I'm arguing. Well, is it junk? In other words, the other thing I read, trying to read it carefully, is that it doesn't constitute conclusive proof. In other words, I think on page 27 of your brief, the presence of retinal hemorrhages and subdural hematoma cannot conclusively prove that the injury was inflicted. But would it have to conclusively prove in order to be admissible? Well, there would have to be some legitimacy to the diagnosis that if you see these three symptoms, it's a result of shaking. And that's how it was presented. And the other problem, the second prong of shaken baby, is it ignores that there's lucid intervals. And I cited to the famous situation of Natasha Richardson, the actress that slipped on the ice and hit her head on the ice, and then she was fine. Then she went home, or she went to the hotel, and about three hours later she got this terrible headache. They took her to the hospital. The next day she died. No, but we don't know. I mean, I have no doubt that all of that happened. And when I read it in your brief, I remembered the incident. But we don't know that her injuries were the same as this kid's injuries, that she might have had one hematoma. And, counsel, there was a Ninth Circuit case in the past year called Jimenez, which dealt with shaken baby syndrome and a very similar argument to what you're making here. And the Ninth Circuit held that there was no relief available under AEDPA because the science on shaken baby syndrome was mixed. If you could comment on that case. I think I saw that case, and I think it was a sufficiency of the evidence. It was either arguing insufficient evidence, or the argument was that the shaken baby syndrome was false testimony, it was a lie, and, therefore, the trial violated federal due process. It was not an issue where ineffective assistance of counsel being argued because he failed to object to the admissibility of the testimony. But I agree that there was that language, that there seems to be a dispute. But my argument is that there was adequate case law and scientific arguments that were available at the time of the trial, specifically this Edmond case from Wisconsin, where they basically threw out the conviction on habeas because they said the science doesn't support that these three observations automatically mean the baby was shaken. The science now shows that lucid intervals exist, so you can't say that an expert can't come in and say it was the last person who had the baby. That's who shook the baby, and that's what happened in this trial. And then the final point in Edmond's case was that there's so many other symptoms that could mimic bleeding in the eye, swelling, bleeding in the brain. Maybe in isolation, but you have all of this damage to the kid's brain, and it's painful just to read the medical exam. Well, I agree. It's very difficult. I mean, this is not just one hematoma. Well, it's three bruises that were not visible on the child at all. I don't know that the bruises are, you can correct me because I'm not a doctor. Much to my parents' regret. But I didn't understand the bruises were the hematomas, and the hematomas were separate. Hematomas, I understand, are essentially kind of a blood clot. Yeah, I believe you're correct. And the bruises were separate, so the kid had three separate bruises in different parts of his face, which one of the doctors, I think, said ruled out the possibility of a fall. And he had this severe brain damage, and it wasn't, again, I'm not a doctor, but it struck me that it was more than just one blood clot. I just remember there was subdural bleeding in the brain. I'm not quite sure if it was a clot. And there was swelling of the brain is what I recall what the evidence was. Our questioning counsel is taking you over your time, but I'm going to put a minute back on the clock when you come back so you have a chance to do rebuttal. Good morning, Your Honors. Deputy Attorney General David Cook, on behalf of Respondent. I'd like to start by discussing that Edmonds case. And to be clear, the problem in Edmonds was that at the time of the trial, this dispute as to shaken baby syndrome evidence had not been put forth before the jury. And the holding in that case was that the petitioner was entitled to a new trial based on this dispute or where this dispute could be presented to the jury. In our case here, both sides of this dispute were presented a standard battle of the experts, and it was for the jury to decide, and the jury reached its verdict. As to the challenge that shaken baby syndrome is junk science, there's no authority to that effect. And in fact, in Jimenez, this court's decision from May of this past year, it talks of in 2006, which is four years before petitioner's trial, there was one textbook which talks about a dispute as to shaken baby syndrome evidence.  In 2011, the theory is under challenge, and I believe that was mentioned in the Cavazos case, the dissenting opinion in Cavazos, and that in Jimenez itself, there's a statement that this dispute continues to this day. A dispute is not the same as a finding that shaken baby syndrome is junk science. It's not the same at all. I'm going to have you go outside the record for a moment. Do you know whether shaken baby syndrome evidence is still being presented in California courts, or has the research been sufficiently undermined such that the prosecutors don't go under that theory anymore? I wish I had data before me, Your Honor. I simply don't. I don't know what the data would be. I just don't know. Let me ask you a question about the standard review, because this is essentially a one-sentence analysis of the ineffective counsel claim, where the state court indicated that but for counsel's alleged ineffectiveness, the result at trial would have been more favorable instead of correctly stating the Strickland standard. Are we now in de novo review? No, Your Honor. We still have deference to the pronged-to analysis of Strickland, and the cases are clear that when you look to the conclusion of the state court, not necessarily whether there's precise formulation or recitation of the rules, you look to the result, and that result is entitled to deference here. And I may add to the earlier comments, and this is taking the prejudice prong alone. I'll hold off my comments about prong one for the moment. But even if we remove the reference to shaken baby syndrome from the prosecution's case, we still have left for the prosecution's case extensive medical evidence of profound injuries to the child's brain, extensive opinion evidence that those injuries, the bleeding, the swelling, was acute, not chronic. We have expert testimony that said should that injury have happened, there would have been no lucid interval, that had that injury happened, that child would have been profoundly injured and affected up until the time medical professionals attended to that baby. Yet the mother left the house that same morning the baby was fine, asked for a Pop-Tart for breakfast. Not only that, Your Honors, but the defense's evidence didn't hold up. His claim that he dislodged a penny in a choking episode was refuted because of the lack of enzyme that would have reflected saliva on not only the penny that he identified on the couch, but the penny that was somewhere else, I forget if it was in the kitchen or not, but two pennies were recovered, both negative for saliva. And so we have acute, profound brain injuries. We have a lie by the defendant, and we have the defendant being in charge of this young, 19-month-old child with acute injuries. Even if the reference of shaken baby syndrome was struck from the record, had it been objected to, and had, putting aside for the moment, that that objection would have been sustained, we still have overwhelming evidence of the petitioner's guilt. His prejudice argument falls apart there. Also, his sufficiency of the evidence argument falls apart there as well. So there were severe injuries to the child, and the question really is who's responsible for that? Was that the person who last took care of the baby or perhaps somebody else who were regularly in contact with the baby caused the injuries instead? So it's this lucid interval that counsel is referring to. Your argument is that even without shaken baby syndrome evidence, you would have gotten the same underlying medical testimony into evidence that the injury, the nature of the injury was such that the person who last took care of the baby caused the injuries. Is that your argument? Like Judge Corman, I am not a medical professional, and perhaps my mother would have rather me gone into another profession as well. I think some of our parents would definitely echo that sentiment. Although my mom was proud of me. But I do have to say I can't speak as a medical professional in this case. I can only speak to the record that is before the court under the applicable standard of review that would apply to the IAC claim and the sufficiency claim. And what we have here is that there was no evidence presented at the time that these injuries were chronic. They were acute injuries. There was mention in the defense case of an episode, a story of some kind, where the mother was seen driving the car. The child was not restrained. The mother stopped short. The child cried. And I don't recall when that was alleged to have occurred. There also was testimony on the defense side that when the petitioner went into the room where the baby was allegedly choking, the baby was on the floor. That evidence could be seen as possibly a fall or possibly some kind of inter-inside-the-car episode. But the prosecution experts almost all unanimously testified that the injuries that they saw were not consistent with an accident or a simple fall or even choking. And one of the medical experts who had experience with victims of drowning even said that the injuries that were seen were not even consistent with drowning. Well, he also said that the baby was apparently choking for 15 seconds. That wouldn't be enough. I could hold my breath for more than 15 seconds. Yes, Your Honor. I mean, they essentially disproved, you could argue, what was a false alibi. Yes. They said it was not the result of choking. As to consciousness of guilt, Your Honor, petitioner was interviewed by law enforcement, and at one point the officer challenged the petitioner to say, well, these injuries don't seem to match your story. And petitioner's response was, see, everybody blames me. Anytime the child has a scratch or something, the blame goes on me. And then went on to make a statement something of, I didn't shake the baby because I know that would cause brain damage. And so even the petitioner's own statement to law enforcement has some consciousness of an episode of shaking or some kind of trauma, not choking, not his claimed alibi or excuse. If I may, Your Honor, just make one last point. There was extensive discussion in the briefs about the Kelly test and whether it would apply to shaken baby syndrome evidence. And I would like to just reemphasize that this is expert medical testimony, direct opinion that comes directly from observation of injuries. Kelly applies to a new scientific technique. In this case, there's no scientific technique, no device, no process, that comes between the expert and the examined injuries on the child. Kelly simply doesn't apply in this case. The cases which did discuss Kelly in context of shaken baby syndrome evidence, the goal was to make sure that the jury, in fairness to the defendant, had before it this dispute that apparently has occurred. In our case, in petitioner's case, that dispute was before the jury, classic battle of the experts, and the jury reached its verdict accordingly. Unless the court has further questions, I ask that this court affirm the judgment of the district court. I'm just curious. The arguments are all admissibility and admissibility under state law. Isn't there or is there a basis to argue that certain evidence can be so unreliable that it creates a due process violation? The Jimenez case could be read that way, that, for example, sometime in the future, if shaken baby syndrome or some other kind of type of evidence. Like does the witch float or sink? Yes. Which at one time apparently was thought of as a way to find out if someone were a witch. I think we all now agree that test is no longer valid. Yes. I've been with my office for over 20 years, and I do remember, and I don't exactly remember when it was, but I remember when DNA evidence became, there was a time when a lot of old cases were reexamined because of new DNA evidence and testing. And so I can't stand here as a member of the prosecution side of the criminal justice system to say that there will never be an opportunity for some theory or type of evidence to go without some challenge in the future. I can't say that. But there are mechanisms in the ADPA for second successive petitions, for actual innocence claims, and for other types of things that were mentioned in Jimenez. Is there a second successive, is there a bar to second successive of habeas petitions in California? I mean, suppose you wanted to raise the argument, I mean, the law review article that I alluded to that was published in 2012, to a layman, me, seems quite persuasive. Could he go back and argue, forget about what my lawyer should or shouldn't have done? It was just a due process violation. Well, Jimenez answers that question, that were there in that. . . No, no, could he go, I understand what you're saying. Could he go back now and make this argument in California? The answer to that, Your Honor, is no. No. Because, again, the dispute, well, there's nothing quantitatively, qualitatively different about the disputed, the sides of dispute that wasn't already presented at his trial. He'd need to show something new, some qualitative, quantitative evidence that this theory is. . . That's what he would need to do to win. And all I'm asking you, is there a bar on a second successive habeas petition in California that would raise an alternative argument, instead of ineffective assistance of counsel, that junk science was introduced? I'm using the word. Well, again, in Jimenez, they talked about a constitutional component of due process that evidence is. . . I know, but could he raise it now? What I'm trying to say is, for example, in a federal court, you get one crack at habeas. With certain exceptions, there's no second successive petition. Is there a comparable bar on second successive petitions in California? In state court? Yes. Oh, I'm sorry, Your Honor, I misunderstood. I thought you were referring to federal court. It is my understanding he could raise it, whether the state court applies a procedural bar. I don't know, but that law is there. Again, Your Honor's respondent asks that this court affirm the judgment of the district court. Thank you, Counsel. Thank you. All right, let's put a minute on the clock. Do you know the answer to my last question, by any chance? I think that there's a case in Ray Dixon that says that if you fail to put all your claims in your first petition for writ of habeas corpus, then you're barred from coming back later. But I haven't read the Dixon case in quite a while, but I think that's called the Dixon bar. And then just in response to what the nature of the ejection to shaken baby syndrome is, that certainly the prosecution could present all of their medical evidence, the autopsy report, the physicians attending the child. But the problem we have is that we don't know how those injuries were inflicted. The autopsy says there was traumatic injury to the brain by some sort of an impact, and we don't know how that happened. And so the shaken baby syndrome expert witness provides that in his expert opinion. He tells how the crime occurred, by shaking, and who committed it, the person that had the last possession of the child. And I think that if the scientific basis- Well, they don't say that explicitly. That's sort of implicit. At most it's implicit. They're just simply saying it's consistent with shaking or other blunt force trauma. And I realize there's a strong inference that if it's shaken baby, it must have been the petitioner, but they don't really say that. I disagree. I quoted in the brief that one doctor who testified that beyond a reasonable doubt this was shaken baby. I know, and maybe that should have been excluded, but there's all this other evidence. And based on his experience and everything he knows about the case, that the unconsciousness would have occurred within 30 minutes to 60 minutes of the infliction of the trauma. And so I think by that expert testimony, we're using an expert to say how the crime occurred and who committed it. And I don't think there's any scientific basis to allow expert witnesses to do that. I think if the trial counsel had made an objection and had utilized the science that was available at the time of the trial, most of which is in that law review article that I cited by Professor Turkemire, where she talks about the next innocence project is shaken baby syndrome, that there's a real danger in these cases that parents who did not shake their baby are accused of these crimes and convicted on the basis of expert testimony saying that the expert knows how this happened. The mother shook her, and the expert knows who did it because the mother was the last person with the baby. So those are the dangers of shaken baby syndrome. I think we've got your argument well in hand. I think the difficulty for the case is that even under that article that you cited, Professor Turkemire acknowledged that these type of challenges are uniformly unsuccessful. And that's the problem. There may come a day when that's no longer the case, but it's a tough record for you. But I thank you for your arguments and thank the state as well for their arguments. Thank you. The matter is submitted.
judges: Nguyen, Owens, Korman